### A. F. SHAPLEIGH HARDWARE COMPANY *v.* HAMILTON.

Opinion delivered April 12, 1902.

1.  PLEADING—INCONSISTENT RELIEF.—A plaintiff cannot sue for a tort and recover a sum of money due upon contract.   (page 324.)

2.  INSTRUCTION—PRESUMPTION OF HONESTY.—An instruction that "when a transaction called in question is equally capable of two constructions, one that is fair and honest and one that is dishonest, then the law is that the fair and honest construction will prevail, and the transaction called in question must be presumed to be honest and fair," is calculated to induce the jury to disregard the weight of evidence.   (Page 325.)

Appeal from Pope Circuit Court.

William L. Moose, Judge.

Reversed.

*W. E. Atkinson* and *J. E. Cravens,* for appellant.

A recovery as in assumpsit would have been proper. 1 Chitty, Pl. 100; 58 Ark. 130; 41 Ark. 476; 40 Ark. 78; 42 Ark. 57; 46 Ark. 57. Any change may be made in the form of a complaint. §§ 5764-5769; 58 Ark. 612; 56 Ark. 603. The complaint was aided by the answer in this cause. 30 Ark. 249; 32 Ark. 386; 37 Ark. 551; 60 Ark. 70. Any defect of allegation in the complaint was cured by the proof. 54 Ark. 289; 59 Ark. 215; 40 Ark. 352; 44 Ark. 524; 65 Ark. 422.

*McKennon & Patterson,* for appellee.

Appellant could not join inconsistent counts, one seeking recovery by the affirmance of a contract and the other by its denial. Bliss, Code Pldg. § 122; 1 Estee, Pl. & Pr. § 315; 1 S. W. 498; 95 N. Y. 237; 31 Ohio St. 277; 49 Ark. 94; 118 N. Y. 387; 14 Barb. 601; 69 Mo. 329; 23 How. 189; 60 Mo. 511; 61 Mo. 489; 56 Mo. 416; 50 N. Y. 1; 51 N. Y. 108; 59 N. Y. 267; 2 S. W. 476; 61 N. Y. 583; 20 Pick. 41; 25 Ore. 311; 3 Nev. 195; 2 Nev. 249; 15 How. Pr. 223; 89 Ga. 154; 55 Ga. 112; 12 Abb. Pr. 300; 21 How. Pr. 289.

Battle, J. A. F. Shapleigh Hardware Company instituted an action against W. V. Hamilton. The complaint is as follows:

"The plaintiff states that it is a corporation, organized and doing business under the laws of Missouri, and that defendant was a merchant at Clarksville, Arkansas, and traded with the plaintiff, and during the year 1895 purchased goods of the plaintiff, through one W. J. Binley, and that, by a combination between the said Binley and the defendant, a large quantity of the plaintiff's goods was shipped to and received by the said W. V. Hamilton, at Clarksville, Arkansas, and were by him converted to his own use; that the same was done with the intent, on the part of the said Binley and the defendant, to defraud, cheat and swindle the plaintiff. Plaintiff says that the same was accomplished through a system of false invoices, whereby a great portion of the goods were never charged to the said defendant, and whereby other portions of the

goods were charged at prices greatly below their real value and prices. The plaintiff files herewith a statement of the transaction between the said W. V. Hamilton, through the said Binley, with the plaintiff, which shows the amount of goods received by him and the value thereof, what portions of the same were not charged at all, and what portions were charged, but at prices below their value, which is marked "Exhibit A," and made a part of this complaint. The plaintiff states that the statement consists of four bills: One March 19, 1895, showing $6.05 not charged; one August 26, 1895, showing the amount not charged $1,005.35; and one August 28, 1895, showing the amount not charged $706.90; and one October 2, 1895, showing the amount not charged $31—making a total of $1,749.30. Plaintiff states that by virtue of these wrongs it has been damaged in the sum of $1,749.30. Wherefore it prays judgment for its damages so sustained, and for all other and proper relief."

Defendant's answer to the complaint filed April 6, 1897, is as follows:

"Defendant admits that plaintiff is a corporation, organized and doing business under the laws of the state of Missouri, and that he is a merchant at Clarksville, Arkansas, and during the year 1895 purchased goods from plaintiff, through one Binley, but denies that, by any combination or collusion between said Binley and himself, any quantity of plaintiff's goods were shipped to and received by him and converted to his own use with any intent, on defendant's part, to defraud, cheat or swindle plaintiff, or that he had any knowledge whatever of any false or fraudulent invoices of goods bought by him, through said Binley, of plaintiff, whereby any goods were never charged to him or whereby any goods were charged at prices below their real values, or the regular prices charged for same by plaintiff. Defendant states that in all his transactions with plaintiff, through said Binley, he dealt honestly and fairly, believing that plaintiff was fully advised and informed of all particulars as to every purchase of goods by him of them, through said Binley, and that all invoices received by him from plaintiff were apparently fair and regular, and if said Binley, as the agent and salesman, at any time had any purpose to cheat, swindle or defraud plaintiff through a system of false invoices, or otherwise, defendant never at any time had any knowledge of such purpose. Defendant further states that he made full payment to plaintiff for all goods

purchased of it by him, through said Binley or otherwise, and denies that by any act of his, or any business transaction of his with plaintiff, through said Binley or otherwise, plaintiff has suffered any wrongs, or has been damaged in the sum of $1,749.30, or in any sum whatever, or that he is indebted to plaintiff in any sum whatever; and he prays that plaintiff recover nothing in this suit, and that he have judgment against plaintiff for all costs in this behalf expended."

On December 9, 1897, plaintiff asked and obtained leave to amend its complaint, and accordingly amended it as follows:

"The plaintiff, by way of amendment to its original complaint filed herein, states that, in addition to the amount of goods received by the defendant in manner and form as stated in the original complaint, he procured and received from the plaintiff two other bills of goods which were never entered upon the plaintiff's books nor paid for by the defendant, and which are not embraced in the statement of goods so received, filed as "Exhibit A" to the original complaint, which said goods he received on the 26th and 28th of August and October 2, 1895, and it files herewith itemized statements of the goods so received or shipped on said days and not embraced in the statement filed with the original complaint, marked "Exhibits B," "C," and "D," which said goods were of the value of $919.33. Whereupon plaintiff says that, by means of the wrongs mentioned in its original and this, its amended, complaint, it has sustained damages in the sum of $2,799.33. Whereupon it prays judgment against said defendant for said sum and for all other and further proper relief."

The issues in the case were tried by a jury; and the plaintiff adduced evidence tending to prove the allegations of its complaint; and the defendant, in his behalf, produced evidence tending to prove the statements contained in his answer, and that $1,331.50 of the purchase money were paid by him for the goods to the traveling salesman and agent of plaintiff the day after they were ordered and before delivery.

At the request of the plaintiff the court instructed the jury in part as follows:

"2. If, from the evidence, you believe there was a combination or conspiracy between the defendant and Binley, as alleged in the complaint, to defraud or cheat the plaintiff in the sale of the goods made to him by Binley, then he, the defendant, should be made to account for and pay for the goods obtained their fair value, and

your verdict should be the sum of their value, with interest at 6 per cent. from the date of maturity of the debt, less the amount shown to have been paid."

And refused to instruct, at its request, as follows: "If, however, from the evidence, you believe there was no conspiracy between the defendant and Binley, and that the defendant, in making the purchases, dealt fairly and honestly, without any knowledge of the purpose of Binley to cheat and defraud the plaintiff, if he had such purpose, through a system of false invoices or otherwise, as he alleges in his answer, then the defendant should be made to account and pay for the goods at the prices for which he bought them; and if the evidence discloses that the goods have been fully paid for by the defendant to plaintiff, your verdict should be for him; but if not, your verdict should be for the plaintiff for the amount not paid, with interest thereon at 6 per cent. from date of purchase."

Other instructions were given at the request of plaintiff, and others were asked by it and refused by the court, which were substantially included in those given.

The following was given, at the request of the defendant, over the objection of the plaintiff:

"11.   Fraud is never presumed, but must be affirmatively proved.   The law presumes that all men act fairly and honestly, that their dealings are in good faith and without intention to wrong, cheat or defraud others; and when a transaction called in question is equally capable of two constructions, one that is fair and honest and one that is dishonest, then the law is that the fair and honest construction must prevail, and the transaction called in question must be presumed to be honest and fair."

The defendant recovered judgment, and the plaintiff appealed.

This is an action *ex delicto*. It is based upon the theory that the appellee, through a combination and conspiracy with one Binley, wrongfully obtained the goods of appellant, and converted them to his own use, to the damage of appellant in the sum of $2,799.33. It is a denial of the existence of any contract by which the appellant sold the goods to the appellee, and is a repudiation of the undertaking by which Binley, as its agent, undertook to transfer the goods to appellee, upon the ground that it was a scheme to cheat and defraud appellant, and to wrongfully convert its goods, without paying therefor a just and reasonable compensation.

In the instructions asked for by the appellant, which are copied in this opinion, one of which was given and the other re-

fused, the appellant sought to recover damages caused by a tort and a sum of money due upon contract. This cannot be done, for the instructions rest upon theories which are inconsistent. The theory of each denies the right to recover upon the theory of the other, and the two cannot co-exist.

In *Fluty* v. *School District,* 49 Ark. 94, it is said: "Under the Code practice, a plaintiff may have any relief which the proof shows he is entitled to, provided it be consistent with the case made by his complaint, and be included in the issue that was tried. By this action the school district seeks to recover damages for the breach of the contract. It therefore affirms that there was a contract, and that it was binding. Now, when it turns out that there was no valid contract, the plaintiff cannot claim the damages awarded for the violation of the supposed contract, because it might have rescinded or disregarded that contract and have recovered a similar sum in an action for money had and received. This relief was inconsistent with the remedy adopted."

In *Barnes* v. *Quigley,* 59 N. Y. 267, the court says: "The complaint is for fraud, and not upon contract. Whether the facts stated constitute a cause of action is not material. The whole framework is in fraud, and the cause of action, as set forth, is based upon the false and fraudulent representation of defendant, by which the plaintiff was induced to surrender up to defendant his promissory note, held and owned by the plaintiff, for an insufficient consideration, an amount considerably less than its face, by reason whereof, as alleged, the plaintiff has been deceived and defrauded out of the sum of $582.70, and has sustained damages to that amount. The theory of the plaintiff at the commencement of the action, and the foundation of his claim as formally made in his complaint, was that a surrender of the note upon an agreed sum, less than the amount actually due in satisfaction of the full sum, was equivalent to a release under seal, and effectually discharged the debt. In that view he could only recover by impeaching the release and discharge for fraud, and he framed his complaint to meet the case in that form.  *  *  *  We are not to speculate upon the question whether the surrender of the note did discharge the obligation. The plaintiff assumed that it did, and brought his suit to recover for the fraud by which the discharge was procured. It was error in the court to change the form of the action, by striking out or treating as surplusage the principal allegations—those that give form to the action—because, perchance, there may be

facts stated by way of inducement spelled out which would, when put in proper form, have sustained an action in assumpsit. The defendant was called upon to answer the allegations of fraud, and not to resist a claim to recover in assumpsit. * * * The plaintiff was not, under the complaint, entitled to a verdict and judgment as in an action upon the note. * * * While the Code is liberal in disregarding technical defects and omissions in pleading, and in allowing amendments, it does not permit a cause of action to be changed, either because the plaintiff fails to prove the facts necessary to sustain it, or because he has mistaken his remedy, and the force and effect of the allegations of his complaint." To the same effect, see *Carson* v. *Cummings,* 69 Mo. 325; *Clements* v. *Yeates,* 69 Mo. 623; *Degraw* v. *Elmore,* 50 N. Y. 1; *Ross* v. *Mather,* 51 N. Y. 108.

In Pomeroy's Code Remedies it is said: "By far the most important distinction directly connected with this doctrine is that which subsists between causes of action *ex contractu* and those *ex delicto.* It is settled, by an almost unanimous series of decisions in various states, that if a complaint or petition in terms alleges a cause of action *ex delicto,* for fraud, conversion, or any other kind of tort, and the proof establishes a breach of contract, express or implied, no recovery can be had, and the action must be dismissed, even though by disregarding the averments of tort, and treating them as surplusage, there might be left remaining the necessary and sufficient allegations, if they stood alone, to show a liability upon the contract." Pomeroy, Code Remedies (3d Ed.), § 558, and cases cited.

The court did not err in refusing to give the instruction asked by the appellant. A party cannot sue in tort and recover in contract or assumpsit.

The instruction which says, "when a transaction called in question is equally capable of two constructions, one that is fair and honest and one that is dishonest, then the law is that the fair and honest construction must prevail, and the transaction called in question must be presumed to be honest and fair," should not have been given. It was calculated to induce the jury to disregard the preponderance of evidence, in the event they found that it showed that the transaction was dishonest, and there was evidence to the contrary. Under the evidence in the case, it was misleading and prejudicial.

Reversed and remanded for a new trial.